UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD BAILEY,

     Plaintiff,

v.                                                          Case No. 3:20cv5999-LC-HTC

FLORIDA DEPARTMENT
OF CORRECTIONS,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Richard Bailey's *pro se* second amended complaint seeking to assert claims pursuant to 42 U.S.C. § 1983. ECF Doc. 14. Plaintiff is proceeding *in forma pauperis*. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(C). Upon screening of the second amended complaint, the undersigned respectfully recommends this action be dismissed. Notably, Plaintiff's allegations, which center on the denial of grievances, fail to state a claim upon which relief may be granted.

## I.    BACKGROUND

Plaintiff, an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at Blackwater River Correctional Facility ("Blackwater"), initiated this action by filing a handwritten letter addressed to Chief Judge Walker, seeking assistance in getting "medical help" for his "ears."  ECF Doc. 1.  Despite the sparseness of the letter, the clerk identified the Defendant as the FDOC.  The letter was not accompanied by a motion to proceed *in forma pauperis* or a filing fee.  Thus, on December 31, 2020, the undersigned issued an order directing Plaintiff to file an amended complaint on this Court's forms as well as to file a motion to proceed *in forma pauperis* or pay the filing fee.  ECF Doc. 3.

Additionally, as a matter of courtesy, the undersigned reviewed the allegations in the letter and directed Plaintiff that his one-paragraph letter was not compliant with Federal Rule of Civil Procedure 8 and, even when read liberally, did not state a claim for deliberate indifference to a medical need under the Eighth Amendment. *Id.*  Thus, the undersigned directed Plaintiff he should be careful to correct these deficiencies in the amended complaint or, alternatively, file a notice of voluntary dismissal.

In the interim, Plaintiff filed two (2) more handwritten letters to Chief Judge Walker as well as a motion for appointment of counsel.  ECF Docs. 5, 6.  One letter appeared to be a request to proceed *in forma pauperis.*  The clerk directed Plaintiff

that no action would be taken on the letters, and the undersigned denied the motion for appointment of counsel.  ECF Doc. 7.  Additionally, the undersigned directed Plaintiff, once again, to use the Court's forms for moving to proceed *in forma pauperis.*  ECF Doc. 9.

Subsequently, Plaintiff filed a first amended complaint, seeking to allege claims against seven (7) individual defendants (ECF Doc. 8) and a motion to proceed *in forma pauperis* (ECF Doc. 10).  The Court granted Plaintiff indigency status, without the payment of a partial filing fee.  ECF Doc. 11.[1]  Despite the fact that the first amended complaint exceeded the Court's page limitations, the Court nonetheless screened the complaint.  Once again, the Court found the complaint to be deficient.

As set forth in the Court's second deficiency order (ECF Doc. 13), Plaintiff's first amended complaint was not sufficient to be served because it sought relief for the denial of grievances, which center on Plaintiff's desire to be evaluated by a specialist for his ear.  *Id.*  As the Court explained, there is no constitutional violation for a denying a grievance.  Moreover, even read liberally and in Plaintiff's favor, the first amended complaint simply concerns Plaintiff's dispute over the medical treatment he believes he should have been provided and is void of any allegation or

---

[1] Plaintiff also filed a second motion to proceed *in forma pauperis* (ECF Doc. 12), which the Court denied as moot.  ECF Doc. 13.

facts to show any of the named individuals were deliberately indifferent in the treatment that was provided. *Id.*

Although Plaintiff had already been given one opportunity to more carefully craft his complaint to state a claim, and failed to do so, the Court determined that a second chance was necessary because Plaintiff's first complaint (the handwritten letter) was so different from his first amended complaint. *Id.* Plaintiff has since filed a second amended complaint. ECF Doc. 14. As discussed below, the second amended complaint is almost identical to the first amended complaint and does not cure the deficiencies the Court previously identified.

## II.    THE SECOND AMENDED COMPLAINT

In the second amended complaint (as in the first amended complaint), Plaintiff sues seven (7) Defendants, all of whom Plaintiff alleges are employees of Blackwater or the Reception and Medical Center ("RMC"): (1) C. Elwood, an Assistant Hospital Administrator at RMC; (2) K. Box, an employee at RMC; (3) C. McDowell, an "SCLO" at RMC; (4) Dr. Bassa, RMC's Medical Director; (5) Lbragas, an official at Blackwater; (6) Jhumealud, an "SUP" at Blackwater; and (7) J.L. Alvarez, a "GRCF" at Blackwater. ECF Doc. 14 at 2–4. Defendant Elwood is sued only in an individual capacity, and the remaining six (6) Defendants are sued only in their official capacities. *Id.*

Also, like the first amended complaint, Plaintiff's second amended complaint exceeds this Court's page limitations and is fifty-one (51) pages.  The second amended complaint consists mostly of descriptions of grievances filed by Plaintiff, along with randomly inserted requests and arguments, such as Plaintiff's insistence that Defendants have committed "federal and state felonies crimes [sic]" and Plaintiff's request for the appointment of counsel (which, as stated above, this Court already denied).  ECF Doc. 14.  As such, the allegations are difficult to follow and even more difficult to comprehend.

From what the undersigned can discern, the crux of Plaintiff's second amended complaint, as with his prior filings, is that Defendants violated his First, Eighth, and Fourteenth Amendment rights by denying his grievances and requests, which center on Plaintiff's desire to be evaluated by an otolaryngologist for severe ear pain.  The second amended complaint sets forth the factual allegations that follow, the truth of which is accepted for purposes of this Report and Recommendation.

Plaintiff begins by broadly asserting, in conclusory fashion, he is in "imminent danger of serious physical dead [sic] or injury" due to "medical negligence misconduct" and "illegal malpractice crime" committed by Defendants.  *Id.* at 7.  Plaintiff then asserts the "diseases" and infection in his ears have caused his eye sight "to go bad to observe closely the reading of the second amended complaint[]

that was provided by" the Court. *Id.* By this, the Court assumes Plaintiff is referring to the complaint form sent to him by the clerk.

Next, Plaintiff asserts, based on five (5) "[r]equests" that were denied and one (1) "cick-call [r]equest [sic]," Defendant Elwood "knowingly and willfully" violated Plaintiff's "Fourteenth Amendment Due Process rights . . . to have 'access' to . . . a medical evaluation from a professional licensed [otolaryngologist] who specializes in 'Diseases' and 'Infected.'" *Id.* at 8. Consequently, Plaintiff is now deaf, and his eyesight "has went bad now," and Plaintiff experiences "'pain,' 'injury,' or 'dead' that was cause[d] by Defendant Elwood," in violation of Plaintiff's Eighth Amendment rights. *Id.* However, review of the inmate requests, which are included along with other grievances in the second amended complaint, indicates that Defendant Elwood denied them because a reviewing provider must give a referral for a specialist, and no such referral relating to Plaintiff had been received. *Id.* at 25–30.

Plaintiff then turns to Defendant Box, who Plaintiff alleges violated his constitutional rights based on three (3) "requeste [sic]" and one (1) "formal grievance." *Id.* at 9. Plaintiff takes issue with the fact that his "requests" were addressed to "the Warden only" and "Classification only," yet were reviewed by Defendant Box, asserting that Defendant Box denied his "fundamental constitutional rights to 'access'" the Warden and Classification. *Id.* Plaintiff asserts that his "First

Amendment rights guaranteed to 'override' any and 'all' administrative policy." *Id.*
A review of the grievances indicates they were returned to Plaintiff because Plaintiff
violated an administrative policy that prohibits inmates from filing duplicative
informal grievances with different staff members. *Id.* at 32–35.

Plaintiff then details "one (1) formal grievance, and one (1) request," which
concern a prior visit by Plaintiff to RMC, in which an unidentified officer (who is
not a defendant in this action), told Plaintiff to "get the '(HELL)'[2] out of the hopital
[sic] and do not come bact [sic] to the hopital [sic]." *Id.* at 10. Plaintiff asserts this
unidentified officer should be prosecuted. *Id.*

Plaintiff alleges Defendant McDowell violated his constitutional rights by
returning the "request" without action and failing to forward the "request" to
"Classification." *Id.* at 11. Defendant McDowell's response, as noted in the
grievance, however, indicates Plaintiff's grievance was returned without action
because Plaintiff violated a prison policy that prohibits using the grievance process
to ask questions or seek information, guidance, or assistance. *Id.* at 38.

Plaintiff turns to Defendant Bassa, who denied a grievance in which Plaintiff
asked the "Warden" why Plaintiff, who had been suffering from ear pain for more

---

[2] Throughout the second amended complaint, Plaintiff places words in parentheticals, seemingly
at random and without a particular purpose. Where the undersigned quotes Plaintiff in this Report
and Recommendation, the undersigned copies the allegations exactly as they are written, including
the parentheticals.

than 300 days, was being denied the right to have "properly [sic] '(medical help)'"—namely, an evaluation from a licensed otolaryngologist or a "licensed specialist '(Foley)' doctor." *Id.* at 12–13.  Plaintiff asserts the denial of the grievance amounts to a violation of the Constitution and "is clearly a '(federal law)' violation crime." *Id.*  In the denial of the grievance, however, Bassa notes that Plaintiff was seen by a provider and prescribed antibiotics only five (5) days prior to filing the grievance. *Id.* at 41.

Plaintiff then tacks on similar allegations that his constitutional rights were violated based on the denial of several other grievances by the Warden at Blackwater and Defendants Lbragas, Jhumealud, and Alvarez, in which Plaintiff complains of the same issues concerning his ear pain and desire for evaluations by specialists. *Id.* at 14–16.  In the denial of one such grievance, Defendant Lbragas noted that consults are initiated by a clinician when deemed necessary, and no referral had been deemed necessary, so Plaintiff must address his issues and concerns at regularly scheduled appointments. *Id.* at 43.  In a separate denial, Defendant Alvarez notes that Plaintiff was evaluated and provided passes that he needed as well as a treatment plan from a clinician. *Id.* at 49.

Based on these allegations, and as mentioned above, Plaintiff asserts Defendants violated his First, Eighth, and Fourteenth Amendment rights.  For relief, Plaintiff seeks punitive damages and "one (1) hundreds [sic] millions [sic] dollars,"

*id.* at 17, as well as a medical evaluation from a "professional, licensed" otolaryngologist so that Plaintiff's "'ears hearing [sic]' and 'eyes sight' [sic] are idientified [sic] and treated properly," *id.* at 7.

## III.   LEGAL STANDARD

Because Plaintiff is proceeding *pro se* and is also a prisoner seeking relief against governmental employees, the Court is required to review his complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings).

Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a plausible claim for relief, plaintiffs must go beyond merely pleading the sheer possibility of unlawful activity by a defendant; plaintiffs must offer factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Additionally, because Plaintiff is proceeding *pro se*, the undersigned will liberally

construe his allegations. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

## IV.    DISCUSSION

District courts have "'unquestionable' authority to control their own dockets. This authority includes 'broad discretion in deciding how best to manage the cases before them.'" *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (citations omitted). Thus, a district court may *sua sponte* dismiss a *pro se* litigant's complaint, where the plaintiff cannot cure the defects by amending his complaint, or an amendment would be futile. *See Horn v. Estate of Camacho*, 817 F. App'x 872, 874 (11th Cir. 2020); *Woldeab v. DeKalb Cnty Bd. of Ed.*, 885 F.3d 1289, 1291 (11th Cir. 2018).

As discussed below, the Court finds a *sua sponte* dismissal to be necessary in this case, as the second amended complaint has several deficiencies that cannot be cured. Namely, Plaintiff (1) fails to state a claim for a constitutional violation, and (2) even if Plaintiff had sufficiently alleged a constitutional violation, Plaintiff fails to state a claim for supervisory liability. A dismissal is particularly appropriate here, where the Court has already given Plaintiff two opportunities to amend his complaint.

## A.    Denial of Plaintiff's Grievances

As stated above, Plaintiff's only allegations of misconduct in the second amended complaint against the named Defendants are that they denied or returned his grievances or "requests."  ECF Doc. 14.  According to Plaintiff, by doing so, Defendants violated his constitutional rights.  *Id*.  However, as the Court previously instructed Plaintiff, ECF Doc. 13, Defendants' denials or return of Plaintiff's grievances or "requests" do not equate to a constitutional violation.  Indeed, "[w]here a state actor's role is limited to the denial of administrative grievances, or the failure to act with respect to such grievances, such state actors are not liable under § 1983 on the theory that their actions constituted an acquiescence with respect to the alleged unconstitutional conduct." *Jackson v. Fla. State Hosp.*, 2020 WL 5239116, at *2 (N.D. Fla. June 26, 2020) (quoting *Denslinger v. Wall*, 2009 WL 437490, at *3 (M.D. Tenn. Feb. 20, 2009)), *report and recommendation adopted*, 2020 WL 5237519 (N.D. Fla. Sept. 2, 2020).

"More particularly, a 'combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983.'" *Id.*  Indeed, even if Defendants' denials of Plaintiff's grievances were unwarranted[3], "[b]ecause a state grievance procedure

---

[3] The denials, however, were not unwarranted.  As set forth above, the denials were based on Plaintiff's (1) failing to follow the correct procedure, (2) failing to have a referral, or (3) having received treatment.

does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983." *Oliver v. Gray*, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)).  Thus, "filing a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied."  *Jackson v. Ellis*, 2008 WL 89861, at *6 (N.D. Fla. Jan. 7, 2008) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Hill v. Inch*, 2020 WL 1677306, at *2 (M.D. Fla. Apr. 6, 2020).

Therefore, Plaintiff's claim that Defendants violated his constitutional rights when they denied or returned his grievances or "requests" fails as a matter of law. *See Swift v. Tifft*, 2013 WL 5913796, at *9 (N.D. Fla. Oct. 31, 2013) ("[M]erely denying a grievance, without personally participating in the unconstitutional conduct . . . is insufficient to establish § 1983 liability."); *McCiskill v. Thompson*, 2010 WL 4483408, at *4 (N.D. Fla. 2010) (holding that the mere denial of administrative grievances did not establish actionable wrongdoing under section 1983); *Demm v. Charlotte Cty. Jail Admin. & Staff*, 2007 WL 57772, at *4–5 (M.D. Fla. Jan. 5, 2007) (finding the plaintiff failed to state a section 1983 claim where alleged liability was predicated on defendants' responses to grievances).

### B.    Deliberate Indifference to Serious Medical Need

Plaintiff appears—based on a liberal reading of the second amended complaint—to be attempting to assert an Eighth Amendment deliberate indifference claim.  For instance, Plaintiff alleges he has experienced "serious physical pain suffering hurting injury or dead [sic]" due to the "illegal medical malpractice crimes" and "medical misconduct" of the Defendants.  ECF Doc. 14 at 17.  Plaintiff, however, has not alleged any facts sufficient to meet the meet the elements of a deliberate indifference claim as to any of the Defendants.

To state a claim of deliberate indifference to a serious medical need, Plaintiff must allege facts sufficient to establish the following: "(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (citing *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007)).  Assuming, *arguendo*, Plaintiff could satisfy the objective element by alleging a serious medical need, he must also satisfy a subjective element.  Such a showing requires Plaintiff to sufficiently allege (1) subjective knowledge of a serious risk of harm and (2) disregard of that risk (3) by conduct that is more than mere negligence as to each Defendant.  *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotations omitted).

However, "[m]edical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted) (holding Alabama Department of Corrections was not deliberately indifferent to inmates' medical needs). "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Id.* at 1505. "A defendant must *purposefully ignore or fail to respond* to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1191 (11th Cir. 1994) (internal quotations omitted) (emphasis in original), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Herndon v. Whitworth*, 924 F. Supp. 1171, 1173 (N.D. Ga. 1995).

While Plaintiff may prefer an evaluation by a specialist, "[t]he Eighth Amendment does not guarantee a prisoner's choice of a physician, a mode of treatment, or a place of treatment." *Brownlow v. Chavez*, 871 F. Supp. 1061, 1064 (S.D. Ind. 1994) (citing *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988)); *see also Kiley v. Andam*, No. 5:06CV86 RS, 2006 WL 3667233, at *5 (N.D. Fla. Dec. 12, 2006) (noting a doctor's decision to forgo referring a prisoner to a specialist does not violate the Eighth Amendment); *Palermo v. Corr. Med. Servs. Inc.*, 133 F. Supp. 2d 1348, 1361 (S.D. Fla. 2001) (holding decision not to refer inmate suffering from

back complications to a specialist did not violate the Eighth Amendment); *Wigfall v. Maloney*, No. CIV.A.03-10714-RWZ, 2004 WL 3088656, at *3 (D. Mass. Oct. 28, 2004) ("[D]enial of [Plaintiff's] request to see a 'licensed doctor,' without more, does not constitute 'deliberate indifference.'").

As shown by the grievances attached to Plaintiff's second amended complaint, this is not a case where Plaintiff has been denied access to medical care. Indeed, Plaintiff was (1) seen by a provider and prescribed antibiotics, *id.* at 41; (2) evaluated by a clinician, *id.* at 49; and (3) provided various passes and a treatment plan, *id.* at 49. Instead, Plaintiff's complaint hinges on the alleged denial of his *preferred choice* of medical care: an evaluation by an otolaryngologist or other specialist. As this Court has already advised Plaintiff, ECF Doc. 13, such a disagreement over medical care does not give rise to a claim for deliberate indifference. *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.").

Regardless, even accepting as true that Plaintiff should have been referred to a specialist, there are no facts showing that any of the Defendants' failures to do so (even if any of the Defendants had the authority to make such a referral) were done out of a "subjective intent by the [defendant] involved to use the sufficiently serious

deprivation in order to punish." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  There are no facts showing that any Defendant's response to Plaintiff was "poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice." *Id.* at 1258 (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

Thus, to the extent Plaintiff may be attempting to allege a claim for deliberate indifference to a serious medical need, such a claim is due to be dismissed.

## C.    Official Capacity Claims

As set forth above, with the exception of Defendant Elwood, Plaintiff sues all Defendants in only their official capacities.  An official capacity suit is essentially one against the agency that employees the individual defendant.  *See, e.g.*, *Christman v. Saint Lucie Cnty. Fla.*, 509 F. App'x 878, 879 (11th Cir. 2013) ("[A] claim against a defendant in his official capacity is the same as a claim against his employer." (citing *McMillian v. Monro Cnty., Ala.*, 520 U.S. 781, 785 n.2 (1997))); *Faulkner v. Monroe Cnty Sheriff's Dept.*, 523 F. App'x 696, 701 (11th Cir. 2013) ("A suit against a person in their official capacity is be treated as a suit against the entity.").  In this case, those entities are the FDOC, which employs Defendants Box, McDowell, and Bassa; and The Geo Group, Inc. ("Geo Group"), which operates Blackwater and employs Defendants Lbragas, Jhumealud, and Alvarez.

Unlike a suit against an official in his/her individual capacity, which only requires a showing that the official—acting under color of state law—caused the deprivation of the plaintiff's federal rights, "a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation . . . ; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (citations omitted). In other words, a plaintiff must show: (1) his constitutional rights were violated; (2) there was a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997) (noting "the *Monell* policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state").

Even if Plaintiff had set forth facts sufficient to allege the existence of a constitutional violation, Plaintiff has failed to identify any custom or policy implemented by the FDOC or Geo Group that led to the supposed violation of his constitutional rights. As such, regardless of a constitutional violation, Plaintiff's official capacity claims against the Defendants are subject to dismissal.

## V.    CONCLUSION

For the reasons set forth above, the undersigned recommends Plaintiff's claims be dismissed for failure to state a claim *sua sponte*, prior to service, and without leave to amend. Indeed, an "early evaluation of the potential merits of a *pro se* litigant's claim is very important because initial screening by the court can eliminate patently frivolous actions." *See, e.g.*, *Gonzalez v. Citicorp Credit Srvcs., Inc.*, 2015 WL 13776794 (S.D. Fla. May 18, 2015), *adopting report and recommendation*, 2015 WL 13776795 (June 22, 2015).

Also, because Plaintiff will be afforded an opportunity to file an objection to this Report and Recommendation, a *sua sponte* dismissal is appropriate. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted) ("[A] district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond."); *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that R & R served as notice that claims would be *sua sponte* dismissed).

It is respectfully RECOMMENDED:

1.    Plaintiff's second amended complaint (ECF Doc. 14) be dismissed under 28 U.S.C. §§ 1915A; 1915(e)(2)(B).

2.    The clerk be directed to close the file.

Done in Pensacola, Florida, this 28th day of April, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.